UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JOHN W. SIMS, JR., JOHN W. SIMS, JR., *d/b/a Maxx Wireless*,<br><br>    Plaintiffs,<br><br>    v.<br><br>MID-CENTURY INSURANCE COMPANY,<br><br>    Defendant. | Case No. 1:21-cv-01056 |

# ORDER & OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. 30). Plaintiff[1] has responded (doc. 32), and Defendant has filed a response to Plaintiff's Statement of Additional Material Facts, as directed by the Court (doc. 33). This matter is therefore ripe for review. For the following reasons, the Motion is granted in part and denied in part.

### BACKGROUND[2]

Plaintiff leased a building out of which he operated multiple businesses. (Doc. 32 at 5). The building was destroyed in a fire, and the owner of the property thereafter elected to sell the property for salvage value rather than rehabilitate the building. (Doc. 32 at 4–5, 7).

---

[1] As the plaintiffs in this action are an individual and that individual's business identity, the Court will refer to them collectively as "Plaintiff" in the singular.
[2] These facts are undisputed per the parties' briefing.

Following the fire, Plaintiff submitted a claim to his insurer, Defendant, seeking payment for the following alleged losses: (1) the destruction of the building, (2) the destruction of his personal and business property in the building, and (3) the interruption of his businesses. (Docs. 32 at 6). Defendant denied the claim (doc. 33 at 2), and Plaintiff filed the instant lawsuit.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The record is viewed in the light most favorable to the nonmovant, and the Court must draw all reasonable inferences from the evidence in the nonmovant's favor. *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 536 (7th Cir. 2018). "The nonmovant bears the burden of demonstrating that . . . a genuine issue of material fact exists." *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018). The parties must support their assertions that a fact is disputed or cannot be genuinely disputed by citing to admissible evidence in the record. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018).

**DISCUSSION**

Defendant argues it is entitled to summary judgment because Plaintiff cannot prove an insurable interest in the claimed losses or the amount of his damages. (Doc. 31 at 11–19). The Court will thus evaluate whether Plaintiff has, as a matter of law, an insurable interest at issue and, if so, whether he has cited sufficient evidence to create a triable issue of fact as to the valuation of his claimed damages.

**I.   Plaintiff's Insurable Interest**

Defendant opens its argument with the erroneous assertion that Plaintiff, as a year-to-year tenant, lacks any insurable interest in the property at issue. "It is well settled that any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property itself." *Breece Veneer & Panel Co. v. Comm'r*, 232 F.2d 319, 324 (7th Cir. 1956) (quoting *Harrison v. Fortlage*, 161 U.S. 57, 65 (1896); and citing *Home Ins. Co. of New York v. Mendenhall*, 164 Ill. 458, 464, 45 N.E. 1078 (1897)). Put another way, "if by a loss the holder of the interest is deprived of the possession, enjoyment, or profit of the property, or a security or lien resting thereon, or other certain benefits growing out of or depending upon it, he has an insurable interest." *Mendenhall*, 164 Ill. 458, 465–66.

Defendant's argument seems to forget Plaintiff also seeks damages for business property loss and business interruption. It cannot be seriously maintained that Plaintiff lacked an insurable interest in the continuation of his business, *see*

3

*Lessees,* 3 Couch on Ins. § 42:51 (3d ed.), and his tangible business and personal property on the leased premises.

Further, as an undisputed tenant,[3] Plaintiff had an insurable interest in the building he leased. None of the cases cited by Defendant dispute this fact; rather, they support it. In *Whitten v. Cincinnati Ins. Co.*, 189 Ill. App. 3d 90, 92, 544 N.E.2d 1169, 1170 (1989), the plaintiffs were tenants of property owned by an individual who went bankrupt and forfeited ownership in the property to a bank; the plaintiffs renewed their lease with the bank and entered into an agreement to purchase the property. *Id.* at 92–93. The plaintiffs then obtained a homeowners insurance policy covering the property; the bank also held an insurance policy on the property, but the plaintiffs were not named insureds under that policy. *Id.* at 93, 94. In January 1987, before the purchase could be completed (the bank missed several closing dates due to a failure to perfect title) the dwelling on the property was destroyed in a fire. *Id.* at 93.

> Plaintiffs and the Bank entered a new lease agreement after the fire under which plaintiffs paid $50 per month rent. The parties terminated the real estate sales contract and the Bank returned plaintiffs' earnest money and additional monies plaintiffs had paid toward the purchase price. Plaintiffs expressed continuing interest in purchasing the property and on May 12, 1987, the parties entered a new purchase agreement and closed shortly thereafter. The Bank reduced the

---

[3] Plaintiff repeatedly states he had entered into an oral agreement to purchase the property at issue, seemingly for the purpose of elevating his interest in the building. Plaintiff's leasehold arrangement and purported oral agreement to purchase the property is insufficient to demonstrate any ownership interest in the property, and the Court has serious doubts as to whether Plaintiff could be viewed as a contracted purchaser pursuant to an oral agreement. The Illinois Statute of Frauds requires real estate contracts be in writing, 740 ILCS 80/2. At any rate, Plaintiff's status as a tenant is undisputed, and that is the interest the Court will evaluate herein.

purchase price by the $51,000 it received from its insurer and sold the property to Airtroll, a company owned by plaintiffs, for $16,500.

*Id.* at 94. From this, the Illinois Appellate Court held the plaintiffs "had an insurable interest in the property at the time of the loss." *Id.* at 98. Similarly, in *Beman v. Springfield Fire & Marine Ins. Co.*, 303 Ill. App. 554, 555, 25 N.E.2d 603, 604 (Ill. App. Ct. 1940), the parties stipulated the plaintiff's "option to repurchase [the insured property] constituted an insurable interest in said premises," and the Wisconsin Supreme Court case cited in *Beman* and noted by Defendant held a lessee has an insurable interest in the property she leases, *Ramsdell v. Ins. Co. of N. Am.*, 197 Wis. 136, 221 N.W. 654, 655 (1928).[4]

The stipulation in *Beman* and the holdings in *Whitten* and *Ramsdell* are for good reason: a lessee certainly suffers a pecuniary loss if the property she leases is destroyed, as the lessee is "deprived of the possession, enjoyment, or profit of the property," *Mendenhall*, 164 Ill. 458, 465–66; *see also, e.g.*, *Griffin v. W.L. Pfeffer Lumber Co.*, 285 Ill. 19, 24, 120 N.E. 583, 585 (1918) (holding a leasehold creates an insurable interest). Defendant's quarrel lies with the value of Plaintiff's interest, not whether the interest exists. It is therefore not entitled to summary judgment on the basis that tenants lack an insurable interest in the property they lease.

That said, it must be determined precisely what insurable interest Plaintiff possessed in the leased property. The parties take an all-or-nothing stance on this

---

[4] Defendant also cites *Patterson v. Durand Farmers Mut. Fire Ins. Co.*, 303 Ill. App. 128, 138, 24 N.E.2d 740, 744 (2nd Dist. 1940), wherein the court considered whether an inchoate right of dower in property created an insurable interest and held it did not. This, however, is inapposite here, where the undisputed interest at issue is a leasehold.

5

point: Plaintiff seeks reimbursement for the full fair market value of the building while Defendant argues Plaintiff possesses no interest in the building at all. The Court has already rejected Defendant's stance, but Plaintiff's stance is likewise untenable.

"A person who enters into possession of property under an agreement with the owner to pay taxes and insurance on the buildings, and to . . . do business there, has an insurable interest in the property as a tenant at will to the extent of the term, as he or she is entitled to notice before dispossession." *Tenants at will or sufferance*, 3 Couch on Ins. § 42:53 (3d ed.). That "insurable interest can consist of a business interruption loss under a lease for a definite term, improvements made or the right to make improvements, the right or obligation to make repairs, or other interests, but recovery after loss is limited," both in the value of the interest and in the time for which the interest exists. *Lessees*, 3 Couch on Ins. § 42:51 (3d ed.). Generally, a lessee's interest is "limited to its remaining interest in the leased property [and terminates] on expiration of the lease." *Id.*

Plaintiff took possession of the building in 2008 pursuant to a written lease by which he was responsible for the annual property tax and costs to maintain and upkeep the premises. (Doc. 31-1 at 75–76). The parties did not execute any subsequent written leases, but their leasehold arrangement continued through May 2019, at which time Plaintiff and the owner appeared to reach a different agreement as to payment due to the owner's stated intent to list the property for sale. (Doc. 31-1 at 77). Plaintiff's and the owner's actions created an implied year-to-year tenancy,

by which Plaintiff was entitled to possession of the leased premises through the end of the annual lease in effect at the time of the July 2019 fire, *see* 735 ILCS 5/9-205 ("[I]n all cases of tenancy from year to year, 60 days' notice, in writing, shall be sufficient to terminate the tenancy at the end of the year."). Thus, per Illinois law, Plaintiff's insurable interest in continued possession of the building continued through the end of the annual lease in effect at the time of the July 2019 fire, provided the fire occurred more than 60 days before the expiration thereof.[5] Further, Plaintiff's deposition suggests he made improvements to the property over the course of his possession thereof, including a new roof, annual blacktopping, and "that type of stuff." (Doc. 31-1 at 79). As stated, tenants like Plaintiff may have an insurable interest in the improvements they make to leased property.

In sum, Plaintiff had an insurable interest in the building, the continuation of his business, and his tangible business and personal property on the premises. Questions of fact remain as to the precise extent of his interest in the building, particularly with regard to his interest in continued possession remaining after the fire.

## II. Proof of Damages

The existence of an insurable interest, however, does not itself constitute adequate proof of damages. The Court must therefore determine whether Plaintiff

---

[5] It is not apparent from the evidence before the Court the dates on which Plaintiff's implied annual lease began and ended, so the Court cannot say precisely when Plaintiff's insurable interest ceased. Relatedly, the parties have not briefed whether the change in arrangement between Plaintiff and the owner constituted proper notice of lease termination or what effect, if any, the fire or subsequent sale of the property had on his interest in continued possession.

7

has cited sufficient evidence to create triable issues of fact regarding the value of his claimed damages. In response to Defendant's charge that Plaintiff cannot prove his damages, Plaintiff cites solely to his own testimony by declaration, deposition, and answers to discovery requests. (Doc. 32 at 8–10, 16). It thus appears Plaintiff intends to rely solely on his own testimony to prove up his damages. To reiterate, Plaintiff seeks compensation for three categories of losses: (1) the destruction of the building he leased, (2) the destruction of his business and personal property, and (3) the interruption of his businesses. (Docs. 11 at 4; 31-4).

As a general matter, "[p]laintiffs must prove the nature, extent or amount of their loss to a reasonable degree of certainty before any award of damages can be made under [an insurance] policy." *Harbor House Condo. Ass'n v. Massachusetts Bay Ins. Co.*, 915 F.2d 316, 318 (7th Cir. 1990). Unless otherwise specified by the policy language, "actual cash value" of property is "determined as replacement cost of property at time of loss less depreciation, if any[.]" *Sproull v. State Farm Fire & Cas. Co.*, 2021 IL 126446, ¶ 54, 184 N.E.3d 203, 221 (internal quotation marks omitted).

Owners of property are typically permitted under Federal Rule of Evidence 701 to offer opinion testimony on the value of their property, provided the opinion is "rationally based on the [owner's] perception," "helpful to . . . determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Together, these mandates clearly require valuations of property and calculation of damages not be based on speculation or conjecture. *See*

8

*Foster v. PNC Bank, Nat'l Ass'n*, 52 F.4th 315, 2022 WL 10362608, *5 (7th Cir. 2022); *Antrim Pharms. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 432 (7th Cir. 2020).

A.  Building

Plaintiff's insurable interest in the building includes the right to possession remaining to him after the fire as well as his interest in improvements made by him. To survive summary judgment, Plaintiff must point to admissible evidence by which a factfinder could value his damages to a reasonable degree of certainty. As Plaintiff erroneously demanded the alleged fair market value of the building and thus tailored his argument to that demand, his evidence and argument on the value of his interest in the building are irrelevant.

Nevertheless, as a lessee, Plaintiff is competent to testify about his leasehold arrangement, and he has offered some such evidence during discovery (*see* doc. 31-1 at 75).[6] He may therefore be able to provide a jury a reasonable basis on which to assign a value to his leasehold interest and thus determine what his remaining right to possession may be worth.

As to the improvements made to the property, neither the Response nor Plaintiff's declaration attached thereto detail any renovations made to the property. Plaintiff did, however, testify the following in his deposition.

---

[6] The Court is being charitable by considering this deposition testimony in support of Plaintiff's position. It is Plaintiff's burden to demonstrate triable issues of fact remain; Plaintiff therefore ought to be the proponent of evidence in support of his claims, not Defendant. However, given the deposition is Plaintiff's testimony and Plaintiff therefore can be expected to testify to the same effect at trial, the Court will consider his deposition testimony here. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

9

Q     Now, if [the property owner] was going to sell the property, were there any concerns that you were not going to be reimbursed for amounts that you had invested in the property?

A     I mean it really wouldn't have mattered either way.

Q     From let's say 2010 up to the time of the fire, how much money did you invest in the building approximately?

A     From 2010?

Q     Yeah, 2010.

A     Oh, I would easily have spent thousands in the building.

Q     Are we talking about more or less than $10,000?

A     Oh, definitely more.

Q     More or less than $50,000?

A     I would say 50 and up, between 60,000 and --

Q     Just approximately.

A     Close to the $50,000 range. I had a new roof put on the building. The other stuff is just getting the parking lot resurfaced. I re-blacktop every year, that type of stuff.

Q     Okay. Did you have to pay for any reservations – I'm sorry, renovations in the year leading up to the fire?

A     From 2008 when I got the building I did all the renovations.

Q     But I'm talking about – I'm going to narrow the time frame for you for just a second. So just July of 2018 to July of 2019 up until the time of the fire, did you have to pay for any renovations during that time frame?

A     No.

Q     Was there any renovations that needed to be done during that time frame that just didn't get done?

A     No.

(Doc. 31-1 at 78–80).

In the Court's view this testimony is insufficient to elevate the basis for valuing Plaintiff's claimed renovations and maintenance efforts from speculative in nature to proven to a reasonable degree of certainty. From this testimony, a factfinder cannot reasonably value the cost of a new roof on the building or the cost to resurface the parking lot, nor is there any basis by which a factfinder could determine any type of depreciation to these improvements. Moreover, "that type of stuff" is the pinnacle of vagueness and cannot possibly be valued. As Plaintiff has pointed to no evidence by which a factfinder could reasonably calculate his interest in improvements made to the building, there is no triable issue on this point.

Thus, Plaintiff's damages as to the building are limited to the value of his right to possession remaining after the fire.

### B. Business Property

Plaintiff seeks $61,900 for the loss of his tangible business and personal property, which included his inventory of cellular phones and "related equipment." The whole of Plaintiff's argument on his ability to prove a $61,900 loss of tangible business and personal property is this:

> With respect to the personal property, the cell phones, John Sims purchased the phones, knew the prices and value and is competent to testify to the value before and after the fire, and that there was no depreciation for this new, unsold, property.

(Doc. 32 at 16). In his statement of additional facts, Plaintiff alleges:

> The fair market value of the cell phones and related equipment that was damaged in the fire was in excess of $61,900. . . .
>
> Plaintiffs provided [Defendant] with a detailed list of the inventory and receipts for the purchase of the personal property consisting of the cell

phones and related equipment used in the Plaintiffs' cell phone business, as part of the claims adjusting process.

(Doc. 32 at 8–9 (citing Doc. 32-1 at 3)). Plaintiff's declaration states essentially the same. (Doc. 32-1 at 3). While Plaintiff may have provided a detailed inventory of property to Defendant during the claim adjustment process, it is not apparent that he produced this information as evidence in this lawsuit. No such list is attached to Plaintiff's Response or otherwise cited by Plaintiff.[7]

As stated, it is Plaintiff's burden at this stage of the proceedings to cite admissible evidence sufficient to supply a basis on which a factfinder could calculate his damages to a reasonable degree of certainty. Plaintiff has—again—failed to do so. Certainly, he is competent to testify about the value of his property, as he asserts in his Response (doc. 32 at 16), *but he has not provided any testimony explaining the basis for his opinion that his property is worth $61,000.* Plaintiff merely states the property included his cellular phone inventory "and related equipment" and that property was worth $61,900. (Doc. 32-1 at 3). This is nowhere near a sufficient basis on which to value such property, let alone determine the property was actually worth $61,900. Plaintiff does not specify the type, quantity, age, or price of the cell phones or *anything* regarding the "related equipment." *See Foster*, 2022 WL 10362608, *5 (finding damages too speculative at the summary-judgment stage where the claimant

---

[7] Defendant provided the Court with a copy of this list (doc. 33-2), but it is not clear it is admissible in Plaintiff's case-in-chief. *See* Fed. R. Civ. P. 36(c)(1). Nevertheless, the Court has reviewed the list, *see* Fed. R. Civ. P. 56(c)(3), and finds it suffers from the same lack of specificity as Plaintiff's cited evidence pertaining to loss valuation. It therefore does not save his claim.

failed to cite "evidence of a single item that he actually sold, how much it sold for, and what the fair market value was").

Consideration of Plaintiff's deposition does not cure this deficiency.

Q      Okay. In terms of the business personal property, cell phones, accessories and then other types of business personal property, how are you involved in arriving at those numbers?

A      That paperwork has also been submitted.

Q      But what did you actually do? Did you walk through the building and take a count of inventory or did you go back and check your books? What process did you go through to arrive at those numbers?

A      Both, checking inventory and referring to receipts. . . .

Q      Were you also selling either DVD's or anything like that at the time of the fire?

A      No, I wasn't selling DVD's.

Q      Did you have any stored inside of the building?

A      Probably some personal ones in the back room.

Q      Any idea, like is this more or less than five DVD's?

A      No, it would have been a tub of them, some DVD's and some cassettes.

Q      So those are just kind of your own personal collection basically?

A      Yeah, it was personal stuff.

Q      Did you have any tools inside of the building?

A      Lots of tools, yeah.

Q      What types of tools did you have?

A      Hand tools, table saws, some saws, grinders, a lot of different tools. So when I was in construction I used a van to work out of and I had a van that I was selling, and I took all the stuff out of the van and put it in the back room. . . .

13

> Q   Okay. The next line down is business personal property and it looks like you have the loss listed as the 61,900. Do you remember how you arrived at that?
>
> A   Just off the cost of products and things that were on the property.
>
> Q   Okay. Like Verizon T-Mobile, any of those companies, when you have a fire loss, do they pay for any of the inventory that was lost? Do they compensate you in any way?
>
> A   No.

(Doc. 31-1 at 101–02, 192–93, 214). This testimony creates more questions than answers. It demonstrates there are more categories of tangible personal property losses than Plaintiff's inventory and "related equipment," as claimed in the Response and declaration. And these additional categories of items are likewise insufficiently evidenced in that Plaintiff provides no specifics about the items, when they were purchased, or how many of each item he lost in the fire. It is impossible from the information provided by Plaintiff in this lawsuit to determine to any reasonable degree of certainty what tangible personal and business property he lost in the fire and what such property was worth.

The ability to opine as to the value of his tangible personal and business property does not relieve Plaintiff of his burden of proof at this stage or the trial stage. Plaintiff's failure to cite evidence adequately demonstrating any basis on which to value his claimed tangible business and personal property losses means there is no triable issue as to these damages.

C.  *Business Interruption*

Finally, Plaintiff claims a $50,000 loss for business interruption due to the fire. Though the estimation of lost profits naturally carries a degree of speculation, such damages must nevertheless also be proven to a degree of reasonable certainty.

> In order to recover lost profits, it is not necessary that the amount of loss be proven with absolute certainty. Being merely prospective, such profits will, to some extent, be uncertain and incapable of calculation with mathematical precision. As such, [a] recovery may be had for prospective profits when there are any criteria by which the probable profits can be estimated with reasonable certainty. However, recovery of lost profits cannot be based upon conjecture or sheer speculation. It is necessary that the evidence afford a reasonable basis for the computation of damages[.]

*Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 315–16, 515 N.E.2d 61, 66 (1987) (internal citations and quotation marks omitted).

Plaintiff's Response does not mention his claim for $50,000 in business interruption losses (*see* doc. 32), but his deposition does shed some light on this issue.

> Q   And then we've got business interruption and that's listed as $50,000. So do you know how you calculated your $50,000 business interruption loss?
>
> A   That number could be a lot higher, a lot higher, but that's the policy limit for that particular --
>
> Q   Did you actually come up with monthly or weekly calculations for this is how much business you're losing and this is how much profit you're losing? Did you do anything like that?
>
> A   I don't think I did it that way, no.
>
> Q   So, for example, if you didn't have -- let me give this hypothetical example. Let's say that every month you were doing $50,000 worth of cell phone sales but the actual profit from that was $5,000, okay? When you are calculating your business interruption loss, are you looking at the $50,000 figure as this is my gross sales or are you looking at it as my profit?

15

> A   I will look at it from an actual profit perspective and then the residuals and commissions off of those as well would be significant, especially as business picks up. Again I don't know if it's high enough, but it's the maximum.
>
> Q   I was just trying to figure out the methodology you used to arrive at that figure.
>
> A   Okay.

(Doc. 31-1 at 214–15). Plaintiff's declaration similarly states:

> As stated in my answer to Interrogatory No. 4, I also lost $50,000 in lost income because the fire shut down all of my businesses: my tax service business, my cell phone business, my insurance agency business and my UHaul rental business. I did not restart the U-Haul rental, cell phone and insurance agency businesses. It took me six months to reopen my tax service business in another location. It would have taken that long to either restore or replace the fire-damaged building. During the process, I lost $50,000 in revenue.

(Doc. 32-1 at 2).

Not only does Plaintiff's Response utterly fail to demonstrate a triable issue of fact regarding his claimed loss for business interruption—reason alone to grant summary judgment in favor of Defendant on this point—but the evidence of record cited above falls far short of affording "a reasonable basis for the computation of damages," *Midland Hotel Corp.*, 118 Ill. 2d at 316. Plaintiff admits he did not perform any actual valuation or estimate of the profits he would have generated but for the fire; instead, his deposition demonstrates he does not know what his lost profits are. He seeks $50,000 merely because it is the policy limit. As Plaintiff's evidence of his claimed loss for business interruption fails to provide any reasonable basis by which to compute this loss, this issue is likewise not triable.

D.   *Summation*

"Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) (internal citations omitted). As such, a nonmoving party "cannot rest upon conclusory statements in affidavits; [they] must go beyond the pleadings and support [their] contentions with proper documentary evidence." *Foster*, 2022 WL 10362608, *3 (internal quotation marks omitted).

Plaintiff's evidence of his alleged damages leaves much to be desired, even when viewed in the light most favorable to him. The sole piece of evidence attached to his Response is a declaration that largely restates the conclusory opinions on the value of his damages alleged in his Complaint. He has failed to go beyond the pleadings by supporting his allegations with admissible evidence showing how he calculated his damages. Consequently, he has failed to demonstrate there are triable issues of fact regarding most of his damages claims. This failure is a shameful waste of resources, as the information and documentation necessary to sufficiently evince his claimed damages to avoid summary judgment should have been readily available to Plaintiff. The ball was squarely in his court, and he dropped it.

## Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (doc. 30) is GRANTED IN PART and DENIED IN PART. Plaintiff's

17

damages are limited to the interest in continued possession of the building that remained to him at the time of the fire.

SO ORDERED.

Entered this 17th day of November 2022.

s/ Joe B. McDade<br>JOE BILLY McDADE<br>United States Senior District Judge